IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 2000 Session

## STATE OF TENNESSEE v. WILLIAM TERRY DOZIER

**Appeal from the Circuit Court for Obion County**
**Nos. 8-370, 8-371, 8-372, 8-373      William B. Acree, Jr., Judge**

---

**No. W1999-00243-CCA-R3-CD -Decided August 16, 2000**

---

The defendant entered guilty pleas to three charges of sale of more than .5 grams of cocaine. The trial court sentenced the defendant as a Range I, standard offender to eight years in the Tennessee Department of Correction on each charge. The court ordered that the sentences be served concurrently for an effective sentence of eight years and fined the defendant $2,000. In this appeal as of right, the defendant challenges the sentence imposed by the trial court, arguing that the court erred by denying him an alternative method of punishment. We conclude that the trial court considered all relevant factors needed to reach an appropriate sentence and that its findings are adequately supported by the record. The defendant has failed to meet his burden of showing that the sentence was improper, and, accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); Joseph P. Atnip, District Public Defender (at trial and on appeal); David L. Hamblen, Union City, Tennessee (at trial) for the appellant, William Terry Dozier.

Paul G. Summers, Attorney General and Reporter; Tara B. Hinkle, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, William Terry Dozier, pled guilty in the Obion County Circuit Court to three counts of the sale of more than .5 grams of a Schedule II controlled substance, cocaine, all Class B felonies. A fourth count for simple possession of marijuana was dismissed on recommendation of the State. The trial court sentenced the defendant as a Range I, standard offender to eight years on each felony count, sentences to be served concurrently in the Tennessee Department of Correction.

The court also ordered the defendant to pay a $2,000 fine. The defendant challenges the sentence imposed, asserting that he should have received some form of alternative sentencing.

After review, we affirm the judgment of the trial court.

**BACKGROUND**

On February 26, 1997, two informants purchased marijuana and .8 grams of cocaine from the defendant. The next day, February 27, 1997, the defendant sold .9 grams of cocaine to the same two informants. The third sale of cocaine occurred on September 30, 1997 when the defendant sold .7 grams of cocaine to two police informants. The charges against the defendant were based upon these sales.

Dale Green, a probation officer with the Department of Correction, prepared the presentence report in this matter. Green testified at the sentencing hearing that the defendant, a twenty-three-year-old, had no prior criminal history. The defendant dropped out of high school after the tenth grade and had not earned a GED. The report further indicated that the defendant had neither experimented with any illegal drugs nor had he been selling drugs for very long before he was arrested. His work history included employment with Hamilton-Ryker Temporary Service from March 17, 1994, through September 30, 1997. Green testified that because the temporary service placed the defendant in several different factories, he was not employed every day during the period from March 1994 to September 1997. Each job lasted approximately one to two months. The defendant was also employed for a short period of time with Gurien Manufacturing, in August 1995. As to the defendant's health, Green testified that the defendant stated he could not stand on his feet for a lengthy period of time because he is 6'1" tall and weighs 350 pounds. The State filed no enhancing factors, and no mitigation factors were filed on behalf of the defendant.

Lieutenant Rick Kelly, a veteran of over twenty years with the Union City Police Department, also testified at the sentencing hearing. At the time, he was assigned to the Drug Task Force and was the investigating officer in each of the defendant's three cases. He testified that there was a significant problem with drugs in the Twenty-Seventh Judicial District. He stated that eighty to eighty-seven percent of the district's crime was directly or indirectly related to the sale and use of crack cocaine and other drugs. Lieutenant Kelly identified the defendant's half-sister, Angela Moss, as having recently been convicted of two counts of the sale of cocaine. The defendant's mother-in-law, Gussie Faye Donlow, had also recently been indicted and convicted of multiple counts of the sale of cocaine.

The defendant testified that he and Ms. Donlow's nineteen-year-old daughter, Tamika, married in January of 1997. They had lived with Ms. Donlow for two years prior to getting married, and continued to live with her after the marriage. The couple had no children. The defendant testified that he began selling drugs shortly after being married because his wife was the sole provider for the family, but "he didn't think it was right." Living with his mother-in-law, he was constantly exposed to drug activity; therefore, he decided to sell drugs himself. The defendant

testified that selling drugs was an easy way to make money so that he could help his wife pay bills. He doubted that he could ever be fully employed. The following exchange took place on direct examination:

> Q. Well, let's say that you can't get a job somewhere and you don't have any yards to rake in the summertime or anything that you can do physically, what's to keep you from going back into these drugs? It's awful easy money, you know, just pick up a little bit of cocaine and give it to somebody. There's no work involved in that. Why aren't you going to do that [even] if you say you're not?
>
> A. I just got into the wrong thing and made an innocent mistake.

The defendant's mother testified that the cause of the defendant's obesity was undiagnosed but was not caused by any glandular disorder, according to a doctor she took the defendant to see. The defendant weighs what he weighed in high school. The defendant's mother testified further to the following:

> Q. Do you know where Terry is now living and what he's doing?
>
> A. Uh-huh.
>
> Q. Do you see him regular?
>
> A. I see him every day.
>
> Q. Tell me what the general day is like whenever you see him; what's he doing, what's going on?
>
> A. Well, he's either at home - - I go over there or he be - - come to my house, you know. Nothing else really to do, just sit there and laugh and talk till he, you know, go home, or I go home.

The defendant's mother testified that she worked a 3:00 p.m. to 11:00 p.m. shift for Bryant Plastic.

Tamika Dozier, the defendant's wife, testified that she had maintained steady employment before and during her marriage to the defendant and currently works a 4:30 p.m. to 2:00 a.m. shift at Tyson. She was not personally involved in any drug activity. She testified that she had encouraged her husband not to sell drugs. Since his arrest, the defendant and his wife had moved to another residence. The defendant's wife and mother both felt that the defendant would be a suitable candidate for community corrections. Mrs. Dozier testified that her husband was a worthwhile person and, given the opportunity to do so, he could straighten out his life.

The trial court found no mitigating or enhancement factors. The court noted that the offenses to which the defendant pled guilty were all Class B felonies and found that the defendant was not presumed to be a favorable candidate for alternative sentencing. Relying on Lieutenant Kelly's testimony concerning the high percentage of drug-related crimes in the county, the court reasoned that confinement was necessary because of the seriousness of the offense and to provide an effective deterrent to others likely to commit similar offenses.

**ANALYSIS**

The defendant argues that he should have received probation, or, at least, placement in the community corrections program. The State asserts that the trial court's denial of all forms of alternative sentencing is supported by the record.

This court's review of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d)(1997). This presumption is conditioned on an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the defendant to show that the sentence imposed was improper. See State v. Gray, 960 S.W.2d 598, 610 (Tenn. Crim. App.), perm. app. denied (Tenn. 1997); see also Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

If our review reflects that the trial court followed the statutory sentencing procedure and imposed a lawful sentence after giving appropriate consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence, even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The legislature has provided probation eligibility according to felony class and sentence. First, a defendant must not fall within the priority categories set out in Tennessee Code Annotated Section 40-35-102(5) to be considered a favorable candidate for alternative sentencing.[1] Second, a defendant must not have been convicted of a felony above Class C. Tennessee Code Annotated Section 40-35-102(6) states the following:

> A defendant who does not fall within the parameters of subdivision (5) and who is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

___

[1] Incarceration is a priority for "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation." Tenn. Code Ann. § 40-35-102(5) (1997).

While there is a presumption favoring alternative sentencing as to Class C, D, or E felons, there is no such presumption when a defendant is convicted of a Class B felony. See State v. Vanderford, 980 S.W.2d 390, 407 (Tenn. Crim. App. 1997). Here, the defendant was convicted of three Class B felonies and was appropriately determined by the trial court not to be presumed a favorable candidate for alternative sentencing.

Although the defendant is not a favorable candidate for alternative sentencing, probation must be automatically considered by the trial court as a sentencing alternative for eligible defendants. A defendant "shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is eight (8) years or less . . . ." Tenn. Code Ann. § 40-35-303(a). The burden of establishing suitability for probation rests with the defendant. See id § 40-35-303(b). The Criminal Sentencing Reform Act of 1989 provides guidelines that the trial court should consider concerning alternative sentences. The code provides the following three criteria for sentences involving confinement:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Finally, the potential or lack of potential for rehabilitation of a defendant should be considered in determining whether a defendant should be granted an alternative sentence. See Tenn. Code Ann. § 40-35-103(5); see also State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

Here, the trial court relied on Section 40-35-103(1)(B) in denying probation. The trial court determined that, according to evidence presented, granting probation would depreciate the seriousness of the crime of professional drug dealing and would serve to encourage other such crimes. Denial of probation has been justified based on the circumstances of the offense when the offenses were of such a nature as to outweigh those factors which might favor probation. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991) (citing State v. Travis, 622 S.W.2d 529, 533 (Tenn. 1981)). The trial court relied on the testimony of Lieutenant Kelly concerning the seriousness of the crime and the high percentage of drug-related crimes in the county. The trial court also noted that the defendant's crime was particularly serious because he approached the sale of drugs, not as an occasional means of maintaining his own addiction, but as a chosen means of livelihood. Thus, he profited from each sale. There was also evidence that the defendant had been involved in multiple uncharged sales.

As to deterrence, it is true that the element of deterrence, whether specific to the defendant or to the population in general, exists to some degree in every case. See Moten v. State, 559 S.W.2d 770, 773 (Tenn. 1977). The weight attached to this factor "varies widely with the class of offense and the facts of each case." State v. Michael, 629 S.W.2d 13, 14 (Tenn. 1982). The defendant testified that he knew "a few" people who could supply him with drugs, so there was a network of dealers known to the defendant. The trial court noted that other family members were deeply involved in drug crimes, according to Lieutenant Kelly who also testified as to the pervasiveness of the sale and use of crack cocaine and other drugs in the jurisdiction.[2] Evidence supported general deterrence. As to specific deterrence, the defendant did move out of the house of his mother-in-law, a woman with numerous convictions on drug charges, and the defendant claimed to have ceased contact with his former circle of fellow dealers. Nevertheless, the defendant considered his drug dealing an "innocent mistake," and the trial court noted the inappropriateness of his demeanor while testifying, that is, his smiling. The record adequately supported the weight the trial court gave to the seriousness of the offenses and the need for deterrence in denying probation.

The trial court also considered the defendant's potential or lack of potential for rehabilitation. See Tenn. Code Ann. § 40-35-103(5). As previously noted, the defendant has no prior criminal record and does not have a drug problem himself. Testimony at the sentencing hearing also revealed that the defendant had been sporadically employed over a period of two years. Nevertheless, the trial court was not persuaded that the defendant was unable to find employment simply because of his weight. The trial court noted that the defendant "has not chosen to engage in any type of work since September 30th, 1997, which was almost a year and a half ago." Testimony concerning his daily activity, "laughing and talking," indicated a complacent attitude toward employment. The defendant testified that one reason he began to sell drugs was because he was constantly surrounded by them. The defendant minimized the seriousness of his crimes, blamed his environment, showed no inclination to become gainfully employed, and displayed a less than remorseful attitude while testifying, all of which were probative of the defendant's prospects for rehabilitation. The trial court appropriately determined the defendant lacked rehabilitative capabilities.

The option for community corrections as a form of punishment is governed by the Tennessee Community Corrections Act of 1985 as codified in Tennessee Code Annotated Sections 40-36-101 to -306. Before a defendant is entitled to community corrections, he must be eligible pursuant to Tennessee Code Annotated Section 40-36-106(a). Here, the defendant meets the minimum eligibility requirements for this program. However, mere eligibility does not end the inquiry. The trial court still possesses the authority to determine at its discretion the suitability of the defendant for this program and to set the conditions and duration of the sentence within the appropriate sentence range. See id. § 40-36-106(e)(2). Although in this case the trial court misspoke when it identified employment as "one of the requirements of Community Corrections," it is clear that the defendant's work history and his self-proclaimed health problem did little to convince the trial court that he could maintain employment and be a productive member of society. The defendant has not

---

[2] See, e.g., State v. Jenkins, 733 S.W.2d 528, 535 (Tenn. Crim. App. 1987) (noting that where marijuana trafficking was a particular problem in the county, a law enforcement officer could relate this fact).

worked for a year and a half. He has yet to acquire a GED, testifying that he was "intending, after I get out of all of this, to go start taking my GED." The trial court also considered the factors discussed above relevant to probation, including the seriousness of the crime, deterrence, and potential for rehabilitation. The record supports the trial court's determination that the defendant is not an appropriate candidate for community corrections.

## CONCLUSION

We conclude that the trial court acted within its discretionary powers based on valid considerations when it sentenced the defendant to confinement; therefore, the defendant has failed to meet his burden of showing that the sentence imposed was improper. Accordingly, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE